LAW OFFICES OF
O'KEKE & ASSOCIATES, P.C.
801 Franklin Avenue.
Brooklyn, New York 11238
Tel.: (718) 855-9595
Attorneys for plaintiffs

------------------------------------X------------------------------
DOMINIC BROADUS,                     :**UNITED STATES DISTRICT COURT**
                                     :**EASTERN DISTRICT OF NEW YORK**
            Plaintiff(s),            :
                                     :   CASE No.:15-CV-04038
      against                        :
                                     :   **(FB) (JO)**
THE CITY OF NEW YORK,                :
P.O. RANDAL MCFARLAND SHIELD #12141: CIVIL ACTION
P.O. ALNORMAN DUNCAN SHIELD #09227 :
SERGEANT NAVIN MISIR SHIELD #29910 :  **FIRST AMENDED COMPLAINT**
                                     :
            Defendant(s).            :  **PLAINTIFF DEMANDS**
                                     :   TRIAL BY JURY
                                     :
------------------------------------X------------------------------


     TAKE NOTICE, the Plaintiff, Dominic Broadus, hereby appears in this action by his attorneys, The Law Offices of O'keke & Associates, P.C., and demands that all papers be served upon him, at the address below, in this matter.


     Plaintiff, Dominic Broadus, by his attorneys, The Law Offices of O'keke & Associates, P.C., complaining of the defendants, The City of New York, P.O. Randal McFarland Shield #12141, P.O.  Alnorman Duncan Shield #09227, and Sergeant Navin Misir Shield #29910, collectively referred to as the Defendants, upon information and belief alleges as follows:


<u>**NATURE OF THE ACTION**</u>

1.   This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the

1

deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the State of New York].

## JURISDICTION

2.   The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourteenth Amendment to the Constitution of the United States.  Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.   All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiff's claims under applicable State and City laws.

4.   As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT

5.   All conditions precedent to the filing of this action have been complied with. On October 28, 2014, within ninety days

after the false Arrest and other claims alleged in this complaint arose, a sworn written notice of claim was served upon the defendant, City of New York. The plaintiff's claim was assigned the number 2014PI032686 by the City of New York's Comptroller's office.

6.   At least thirty days have elapsed since the service of the abovementioned notice of claim, and adjustment or payment of the claim has been neglected and/or refused.

7.   This action, pursuant to New York State and City Law, has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

## PARTIES

8.   Plaintiff resides in Brooklyn, New York and is a resident of the State of New York.

9.   The actions which form the underlying basis for this case all took place in the County of Kings, within the jurisdiction of the Eastern District of New York.

10.  Defendants, P.O. Randal McFarland Shield #12141, P.O. Alnorman Duncan Shield #09227, and Sergeant Navin Misir Shield #29910, are police officers for the City of New York, acting under color of state law.  They are being sued in both their individual and official capacity.

11.  The Defendant, City of New York is a municipality in the State of New York and employs the Defendants Police Officers.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.  On or about October 20, 2014, the plaintiff and one of his friends walked into the subway train station at Eastern Parkway by Franklin Avenue in Brooklyn New York. Plaintiff swiped his friend into the station with plaintiff's Metro

3

Card. As plaintiff said goodbye to his friend and turned to walk out of the station plaintiff was accosted by two of the defendant police officers who were at the station. One of the police officers asked plaintiff to surrender his Metro Card and plaintiff handed over his Metro card to the police officer.

13. Without offering any resistance plaintiff politely asked the officer if plaintiff had done anything wrong. The police officer ignored plaintiff's question, then plaintiff brought out his cell phone and started recording his encounter with defendant police officers.

14. One of the police officers angrily slapped the phone out of plaintiff's hand. The phone fell and broke. As plaintiff bent down to pick the phone up, the officer grabbed plaintiff and slammed him against a wall at the station. He pinned plaintiff against the wall and started hitting plaintiff's left leg repeatedly with his baton from knee downwards.

15. The other defendant police officer asked his companion what he was doing to plaintiff but he did not intervene to stop his companion from beating or rough-handling plaintiff; instead he called for back-up.

16. When other defendant police officers arrived at the scene plaintiff had already slumped to the ground because of the pain in his left leg. The officer who was beating plaintiff handcuffed plaintiff as he lay on the floor. He asked plaintiff to stand up and walk to the waiting police vehicle. Plaintiff told him that he could not walk as his left leg was hurting badly.

17. The other police officers who arrived helped and dragged plaintiff to the police car after they dumped plaintiff at the subway station steps for a while on their way towards

the police vehicle. As plaintiff lay on the steps one of the defendant police officers was making fun of and laughing at plaintiff. As this was going on plaintiff was screaming in pain and asking for medical assistance/treatment but he was ignored by the defendant officers.

18. Thereafter plaintiff was transported in the defendants' vehicle to the NYPD Transit District 32 where he was searched, pedigreed, booked and further detained without any food, drink or access to a functional restroom facility.

19. At the police station another defendant police officer asked plaintiff to stand up. Plaintiff again explained that he could not stand up because the pain in his left leg was becoming unbearable. The officer said that he would tase the s---t out of plaintiff if plaintiff lied to him.

20. After several hours, defendant police officers called an ambulance which took plaintiff to a hospital where he received emergency room treatment and was given painkillers, a knee brace and crutches. Plaintiff's leg was also x-rayed. Plaintiff was diagnosed with knee injury.

21. As plaintiff was leaving the hospital, defendant police officers took plaintiff's shoes and crutches away from plaintiff forcing him to ambulate to the police vehicle on one leg.

22. Afterwards, defendant police officers transported plaintiff back to the police station where he was further detained till the next morning until around 9 am. From the police station plaintiff was transported the to the criminal court, central bookings division, Kings County, where he was further detained in a holding pen, again without food, drink and or access to a functional restroom facility.

23.   At the central booking defendant police officers were asked why plaintiff was not allowed to use his crutches and they said that plaintiff did not need crutches even though they knew he needed his crutches as prescribed by the doctor who treated plaintiff. It was at the central booking that the plaintiff was told for the first time that he was arrested because he used his Metro Card to swipe someone else into the subway station and that it was illegal.

24.   Plaintiff remained at the central booking till 4 pm before he appeared before a judge charged with CPL 205.30, Resisting Arrest and CPL 165.15, Theft of Services. Plaintiff was released on his own recognizance and caused to return to court for at least five more times before his charge of Theft of Service was dismissed.

25.   The decision to arrest the plaintiff was objectively unreasonable under the circumstances.

26.   That while plaintiff was being detained, the defendants individually and/or collectively completed arrest paperwork, in which they swore in part, that the plaintiff had committed a crime and/or offense.

27.   The factual claim by the defendant officers was materially false and the defendant officers knew it to be materially false at the time they first made it, and every time thereafter when they repeated it.

28.   That the defendant officers forwarded these false allegations to the Kings County District Attorney ("KCDA") in order to justify the arrests and to persuade the KCDA to commence the plaintiff's criminal prosecution.

29.   That as a direct result of these false allegations by the defendant an officer, the plaintiff was criminally charged under Docket Number 2012KN081591 and 2012KN081592.

30.   The plaintiff remained in the detention of the defendants

for a second day, before the plaintiff was brought before a judge of the criminal court.   Afterwards plaintiff appeared before the judge for at least five times on separate dates, and his charge of theft of Public Service was dismissed.

31.   At no time prior to or during the above events was there probable cause to arrest the plaintiff, nor was it reasonable for the defendants to believe that probable cause existed.

32.   At no time did any defendant take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the other defendants against the plaintiff.

33.   The defendant officers intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

34.   As a direct and proximate result of defendants' actions, plaintiff suffered and continues to suffer injuries, including but not limited to emotional distress, nightmares, and unwarranted severe anger bouts some or all of which may be permanent.

35.   The false arrest of plaintiff, plaintiff's wrongful imprisonment because of defendants' knowledge of a lack of any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

36.   As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

37.   Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to

properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

38. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers including defendants in this case, to engage in unlawful conduct.

39. That the defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD

40. Defendant New York City had actual or constructive knowledge that there was inadequate supervision over and /or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers and other blatant violations of the United States Constitution and rules and regulations of the NYPD. Despite ample notice and/or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in police conduct in a lawful and proper manner, inclusive of use of their authority as law enforcement officers with respect to the general public and specifically the plaintiff herein.

41. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of

police authority by its NYPD employees and thereby deliberately and intentionally adopted, condoned and otherwise created through deliberate inaction and negligent supervision and NYPD policy, practice and custom of utilizing illegal and impermissible searches, arrests and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond plaintiff's arrest.

42. That all of the acts and omissions by the defendant officers described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

43. The existence of the unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long history of civil actions in state and federal courts.

44. In an Order dated November 25, 2009, in <u>Colon v. City of New York, 09 CV 0008 (EDNY)</u>, the court held that:

> *Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid*

*constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.*

45. That on more than half of the occasions where the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

46. That the defendant New York City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk and the inadequate level of supervision would lead to violation of individuals constitutional rights in general, and caused the violation of plaintiff's rights in particular.

47. The actions of all defendants, acting under color of State law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in his person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

48. By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

49. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

**AS A FIRST CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER:
EXCESSIVE FORCE UNDER 42 U.S.C § 1983**

50. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 49 of this complaint as though fully set forth herein.

51. The level of force employed by one or more of the defendant officers was objectively unreasonable and in violation of the plaintiff's constitutional rights.

52. As a result of the aforementioned conduct of the defendant officers, the plaintiff was subjected to excessive force, resulting in serious and severe physical injuries.

53. As a consequence of the defendant officers' individual and/or collective actions as set forth above, the plaintiff suffered serious personal injuries, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against the defendant officers, individually and severally.

**AS A SECOND CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER:
FAILURE TO INTERVENE UNDER 42 U.S.C § 1983**

54. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 53 of this complaint as though fully set forth herein.

55. Each defendant officer had an affirmative duty to intervene on the plaintiff's behalf to prevent the violation to his constitutional rights, as more fully set forth above.

56. Each defendant officer failed to intervene on the plaintiff's behalf to prevent the violation of his constitutional rights, despite having had a realistic and

reasonable opportunity to do so.

57. As a consequence of the defendant officers' individual and/or collective actions, the plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, serious personal injuries, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in an amount to be determined at trial, against the defendant officers, individually and severally.

**AS A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS: EXCESSIVE FORCE PURSUANT TO ARTICLE 1, SECTION 12, OF THE NEW YORK STATE CONSTITUTION**

58. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 57 of this complaint as though fully set forth herein.

59. The above-described respective assault, battery and excessive force, against the plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest, summary punishment, and subsequent detention.

60. As a result of the above-described assault, battery and excessive force, the plaintiff was caused to suffer loss of liberty, serious personal injuries, humiliation, great mental and physical anguish, embarrassment and scorn among those who know him; was prevented from attending to his necessary affairs, and has been otherwise damaged in his character and reputation.

61. Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against the defendant officers,

individually and severally.

62.  The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

## AS FOURTH CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

63.  By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 62 of this complaint as though fully set forth herein.

64.  The defendant officers used excessive force in the arrest and incarceration of the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said use of excessive force would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

65.  The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

66.  The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

67.  The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a.  Wrongfully arresting individuals on the pretext that they Are/were involved in illegal vice transactions;

b.  manufacturing evidence against individuals allegedly

involved in illegal vice transactions;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so.

68. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

69. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do

they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

70. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

71. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

72. Additionally, according to a report of the New York City Bar Association issued in 2000, the City and Kelly have isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial

civil claims and police department action against officers.

73. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

74. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

75. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a) The right of the plaintiff to be secure in his person and

effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c) The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

(d) The right to be free from the use of excessive force.

76. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

77. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

78. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the

activities and conduct of the defendant officers.

79.  The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

## AS A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:
### ASSAULT AND BATTERY

80.  Plaintiff repeats and re-alleges paragraphs 1 through 79 as if each paragraph is repeated verbatim herein.

81.  At the time of the plaintiff's arrest by the defendant officers, the plaintiff did not challenge nor resist the defendants, nor engage in any threatening behavior towards the defendants.

82.  However, as set forth above, the defendant officers assaulted the plaintiff, battered the plaintiff, and subjected the plaintiff to excessive force and summary punishment.

83.  The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers' acts as described above.

84.  Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against the defendants, individually and severally.

85.  This action, upon information and belief, falls within one or more of the exceptions of CPLR 1602.

## AS A TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS: NEGLIGENCE

86.  Plaintiff repeats and re-alleges paragraphs 1 through 85 as

if each paragraph is repeated verbatim herein.

87. As a direct and proximate result of the negligent acts and/or omissions of the defendants as set forth herein, the plaintiff suffered physical injury, conscious pain and suffering, medical expenses, and mental anguish.

88. That by reason of the said negligence, the plaintiff suffered and still suffers bodily injuries, became sick, sore, lame and disabled and has remained sick, sore, lame and disabled since the aforesaid incident; has suffered great pain, agony and mental anguish and is informed and verily believes that he will continue to suffer for a long time to come and that said injuries are permanent; has suffered economic loss inasmuch as he was forced to, and is still forced to expend sums of money on medical treatment; that he was deprived of his pursuits and interests and verily believes that in the future he will continue to be deprived of such pursuits; and that said injuries are permanent. The defendant officers were at all material times acting within the scope of their employment, and as such, the City defendant is vicariously liable for the defendant officers acts as described above.

89. This cause of action, upon information and belief, falls within one or more of the exceptions of CPLR 1602.

**WHEREFORE**, plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;

2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

3. For costs of suit herein, including plaintiff's reasonable

attorney's fees; and;

4. For such other and further relief as the court deems proper.

Dated: October 21, 2015
       Brooklyn, New York

O'keke& Associates, PC.

*/s/ John C. Iwuh*
_____
John C. Iwuh, Esq. (JI-2361)
O'keke& Associates, PC.
Attorney for Plaintiff
801 Franklin Avenue
Brooklyn, New York 11238
Tel. (718) 855-9595
Direct Dial: (347)442-5089

Civil Case Number: 15-CV-04038 **(FB) (JO)** Attorney: JOHN C. IWUH, [2361]

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DOMINIC BROADUS,

                                        Plaintiff(s),

     against

THE CITY OF NEW YORK,              :
P.O. RANDAL MCFARLAND SHIELD #12141:
P.O. ALNORMAN DUNCAN SHIELD #09227 :
SERGEANT NAVIN MISIR SHIELD #29910 :

                                        Defendant(s).

**AMENDED SUMMONS & COMPLAINT**
**DEMAND TRIAL BY JURY**

**O'keke & Associates, PC**
801 FRANKLIN AVENUE, BROOKLYN NY, 11238
PHONE: (718) 855-9595  FAX: (718) 855-9494
EMAIL: polawuk@aol.com,

To:

Defendants/Attorney(s) For Defendants.

Service of a copy of the within is hereby admitted

          Dated:_____

     Attorney(S) For:_____